**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ANGELAR J. G., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 24-cv-00466-SH |
| FRANK BISIGNANO,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Angelar J. G. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.     Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage

---

[1] Effective May 7, 2025, pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff applied for Title II disability benefits on September 13, 2021, with a protective filing date of June 14, 2021. (R. 277–80, 10.) In her application, Plaintiff alleged she has been unable to work since June 30, 2020, due to conditions including depression, blindness in one eye, high blood pressure, major anxiety, bipolar disorder, and kidney issues. (R. 277, 352, 367.) Plaintiff was 49 years old on the date last insured. (R. 13, 277.) Plaintiff has two years of college education and past relevant work as a phlebotomist. (R. 368, 67.)

Plaintiff's claim was denied initially and upon reconsideration. (R. 168–71, 179–81.) Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). (R. 182–83, 36–72.) The ALJ denied benefits and found Plaintiff not disabled. (R. 10–22.) The Appeals Council denied review on August 2, 2024 (R. 1–5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff now appeals.

## III.     The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through June 30, 2020. (R. 13.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity on her alleged onset date/date last insured.

3

(*Id.*)  At step two, the ALJ found Plaintiff to have the following severe impairments: (1) asthma; (2) obesity; (3) hypertension; (4) blindness in her right eye; (5) bipolar disorder; (6) major depressive disorder; and (7) posttraumatic stress disorder.  (*Id.*)  At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment.  (R. 13–15.)

The ALJ then determined that Plaintiff had the RFC to perform light work with various exertional, environmental, and non-exertional limitations, including to

> frequently stoop, occasionally climb ramps or stairs, balance or kneel, but the job should not involve climbing ladders, ropes, or scaffolds, crouching or crawling.  The job should not involve work performed near unprotected heights or moving mechanical parts.  The individual will have monocular vision due to having no vision in the right eye.  The job should not involve work tasks where items present from the right.

(R. 15.)  The ALJ provided a recitation of the evidence that went into this finding.  (R. 15–21.)  At step four, the ALJ found Plaintiff unable to perform her past relevant work.  (R. 21.)  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as laundry sorter and office helper.  (R. 21–22.)  Accordingly, the ALJ concluded Plaintiff was not disabled.  (R. 22.)

## IV.  Issues

On appeal, Plaintiff asserts three points of error, arguing the ALJ: (1) failed to evaluate opinions and prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c (ECF No. 11 at 3–9); (2) failed to fully develop the record (*id.* at 9–10); and (3) failed to adequately support RFC limitations with substantial evidence (*id.* at 10–15).  The Court finds the ALJ erred in her consideration of certain prior administrative medical

4

findings and in her evaluation of evidence supporting the RFC.  The Court does not address Plaintiff's other arguments.

V. **Analysis**

  A. **The ALJ's Consideration of Prior Administrative Medical Findings**

Plaintiff first contends that the ALJ's analysis of opinions and prior administrative medical findings was in error.  (*Id.* at 3–9.)  The Court agrees as to the assessment of Dr. Gerald Dzurik, who offered a prior administrative medical finding on reconsideration. (R. 148–58.)

  1. **Prior administrative medical findings – Generally**

For claims filed on or after March 27, 2017, prior administrative medical findings are evaluated pursuant to 20 C.F.R. § 404.1520c.  Prior administrative medical findings are findings "about a medical issue" from the Social Security Administration's "Federal and State agency medical and psychological consultants at a prior level of review" in the claimant's "current claim based on their review of the evidence in [the] case record."  20 C.F.R. § 404.1513(a)(5).  Such findings include, among other topics, the existence and severity of the claimant's impairments and symptoms; whether the impairments meet or medically equal a listing; and the claimant's RFC.  *Id.*

When considering a prior administrative medical finding, an ALJ does not defer or give it any specific evidentiary weight.  *Id.* § 404.1520c(a).  Instead, the ALJ evaluates and articulates the "persuasiveness" of the finding by considering five factors.  *Id.* § 404.1520c(a)–(c).  These factors include (1) the supportability of the finding; (2) the consistency of the finding; (3) the medical source's relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and

extent of treatment relationship, and examining relationship); (4) the medical source's specialization; and (5) any other factors that tend to support or contradict the finding. *Id.* § 404.1520c(c).

In every situation, the ALJ must explain how she considered the first two factors—supportability and consistency.[2] *Id.* § 404.1520c(b)(2). The ALJ is not required to articulate findings on the remaining factors unless there are two or more findings about the same issue that are equally well-supported and consistent with the record, but not identical. *Id.* § 404.1520c(b)(2)–(3).

### 2. Dr. Dzurik's findings

Here, at a prior level of review, Dr. Dzurik reviewed the medical record and offered opinions about Plaintiff's physical RFC during the relevant period of June 30, 2020. (R. 148–58.) Dr. Dzurik opined that Plaintiff had the RFC to occasionally lift/carry up to 20 pounds; frequently lift/carry up to 10 pounds; stand/walk roughly 6 hours in an 8-hour workday; sit (with normal breaks) roughly 6 hours in an 8-hour workday; frequently climb ramps/stairs; occasionally climb ladders/ropes/scaffolds, stoop, kneel, crouch, and crawl; and balance without limitation. (R. 155.) Further, Dr. Dzurik found "limited right" visual limitations in near acuity, far acuity, depth perception, accommodation, color

---

[2] Supportability is internal to the medical source—"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her . . . prior administrative medical finding(s), the more persuasive the . . . prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). Consistency, meanwhile, has both an internal and external element—"The more consistent a . . . prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the . . . prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). The Administration also interprets the consistency analysis to include an evaluation of whether there are "<u>internal</u> conflicts within the evidence from the same source." *Evaluating Med'l Opinions and Prior Admin. Med'l Findings–Claims Filed on or after Mar. 27, 2017*, Program Operations Manual System, DI 24503.025(E)(2) (emphasis added).

vision, and field of vision. (R. 156.) When asked to provide "RFC Additional Explanation," Dr. Dzurik noted that "Claimant has back and knee pain," her "[g]ait is antalgic and she has difficulty with heel toe and tandem walk[ing]," and she has a restricted "visual field." (*Id*.)

### 3. The ALJ's assessment of Dr. Dzurik's findings

In her decision, the ALJ recounted Dr. Dzurik's RFC and noted that he "found the claimant could perform light exertion work" with additional limitations. (R. 20.) Without indicating whether she found the opinion persuasive, the ALJ noted:

> Although the undersigned has given a similar residual functional capacity assessment . . ., this was not supported by Dr. Dzurik's review of the record where he noted the evaluation period was June 30, 2020 and all he noted was back and knee pain, antalgic gait, difficulty with heel, toe and tandem walking, and restricted vision. He cites no medical evidence and notes no impairments other than restricted vision. It is not consistent with the record at the time of his review.

(*Id*.)

Plaintiff argues this assessment was in error because it failed to articulate the persuasiveness of Dr. Dzurik's opinion—particularly his opinion regarding Plaintiff's visual limitations—and erred in consideration of supportability and consistency under 20 C.F.R. § 404.1520c. (ECF No. 11 at 6–9.) For the most part, the Court agrees.

As Plaintiff notes, § 404.1520c obligates the ALJ to "articulate in [her] . . . decision how persuasive [she finds] all of the . . . prior administrative medical findings in" the case record. 20 C.F.R. § 404.1520c(b). The ALJ did not do so. While there may be some cases where such an error is harmless, this is not one of them. Here, regarding supportability, the ALJ observed that Dr. Dzurik's findings—in which "he noted the evaluation period

7

was June 30, 2020"[3]—were unsupported[4] because he only relied on Plaintiff's pain, difficulty walking, and restricted vision, while not citing medical evidence or noting any physical step-two impairments beyond restricted vision. (R. 20.) This was an adequate consideration of supportability. *See* 20 C.F.R. § 404.1520c(c)(1). However, the ALJ's note that the findings were "not consistent with the record at the time of his review" (R. 20), without more, was inadequate considering the RFC the ALJ ultimately adopted.

In her decision, the ALJ's RFC tracks with Dr. Dzurik's in certain respects, but is less restrictive in some (stooping) and more restrictive in others (climbing, crouching, crawling, and lacking right-eye vision). (*Compare* R. 15 *with* R. 155–56.) In these circumstances, the ALJ's bare notation that Dr. Dzurik's findings were "not consistent with the record" (R. 20) must be clarified. The ALJ must explain, in a manner sufficient for the Court to "follow the adjudicator's reasoning in conducting [its] review," how she

---

[3] The Commissioner's claim that Plaintiff's supportability and consistency arguments fail because "there was no evidence from the single day relevant period" is not well taken. (ECF No. 13 at 8.) While in Title II cases a claimant must establish disability prior to the expiration of her insured status, *Miller v. Chater*, 99 F.3d 972, 975 (10th Cir. 1996), courts are clear that evidence generated after the date last insured may be considered when related to the insured period, *White v. Berryhill*, 704 F. App'x 774, 779 (10th Cir. 2017) (unpublished). This is because, while the evidence might have been authored outside the last insured date, it may shed light on the nature and severity of the claimant's condition during the relevant period. *See Chitwood v. Comm'r of Soc. Sec. Admin.*, No. CIV-19-092-KEW, 2020 WL 5757673, at *3 (E.D. Okla. Sept. 28, 2020) ("Medical records that predate or postdate the insured period, however, may constitute indirect evidence of a claimant's condition during the insured period and, therefore, should also be considered."). An ALJ may not refuse to consider medical evidence simply because it is dated outside the insured period, as this would be "legal error." *Miller*, 99 F.3d at 977.

[4] The Court declines to adopt Plaintiff's reading of the ALJ's supportability analysis, which Plaintiff argues was a comparison between Dr. Dzurik's RFC and the ALJ's. (ECF No. 11 at 9.) While the language is somewhat unclear— "[a]lthough the undersigned has given a similar residual functional capacity . . ., this was not supported by Dr. Dzurik's review of the record" (R. 20)—the Court reads the sentence in conjunction with the paragraph as a whole and interprets "this" to reference Dr. Dzurik's RFC.

viewed the consistency of the prior administrative medical findings in light of "the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(b)(2), (c)(2); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Without further explanation—in a decision that does not indicate how persuasive the ALJ viewed Dr. Dzurik's findings to be—the Court cannot follow the ALJ's reasoning to determine (1) what external evidence was inconsistent with Dr. Dzurik's findings and (2) how that evidence squares with the ALJ's own physical RFC.[5]

Further, clarification of the overall persuasiveness of Dr. Dzurik's vision findings is particularly necessary considering the case record here, where Dr. Dzurik's "limited right" finding regarding Plaintiff's near acuity and color vision is the only portion of the record to address certain functions required for Plaintiff to perform the representative jobs identified at step five. (R. 22.) *See* Dictionary of Occupational Titles ("DOT") § 239.567-010, 1991 WL 672232 (office helper); DOT § 361.687-014, 1991 WL 672991 (laundry sorter). Both the office helper and laundry sorter jobs require frequent near acuity, and the job of laundry sorter requires frequent color vision. *Id*. By failing to address Dr. Dzurik's findings in these areas beyond a notation that he generally found "limited right vision," the ALJ had no occasion to consider these functional requirements. As such, this Court cannot tell, for instance, how the RFC's right-side vision limitations have affected Plaintiff's near acuity and color vision capabilities <u>overall</u> (not just in her right eye). The ALJ must clarify this matter on remand.[6]

---

[5] The Commissioner argues that "the ALJ correctly observed that Dr. Drurik's [sic] findings were not consistent with the record at the time of his review, <u>as there were no treatment records for June 30, 2020</u>." (ECF No. 13 at 7 (emphasis added) (citing R. 20).) As noted *supra* n.3, if this was the ALJ's reasoning, it would be legal error.

[6] For example, in *Harless v. Saul*, the court noted that "the DOT does not explicitly prescribe that the vision requirements for . . . occupations apply to vision performed with

### B.     RFC Assessment

Next, Plaintiff argues the RFC is unsupported by substantial evidence due, in part, to the ALJ's misrepresentation of Plaintiff's testimony regarding the effects of vision on her driving. (ECF No. 11 at 12.) The Court, again, agrees with Plaintiff.

#### 1.     RFC – Generally

To proceed to steps four and five of the sequential evaluation, the ALJ must first determine a claimant's RFC. That is, a claimant may have impairments and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1). The claimant's RFC is what's left—"the most [the claimant] can still do despite [her] limitations." *Id.* The Commissioner makes this decision based on "all the relevant medical and other evidence" in the case record. *Id.* § 404.1520(e). Categories of evidence include (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings. *Id.* § 404.1513(a).

As Social Security Ruling ("SSR") 96-8p clarifies, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." 1996 WL 374184, at *3 (July 2, 1996). The RFC analysis must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence," and "explain how

---

the use of both eyes." No. CIV-18-841-G, 2020 WL 1330436, at *4 (W.D. Okla. Mar. 23, 2020). Even so, when the Commissioner argued that a VE's testimony constituted "substantial evidence for [a] step-five finding because Plaintiff lacks significant vision limitations in his *left* eye," the court faulted the VE for not offering any "explanation as to how . . . eliminating Plaintiff's ability to see <u>on one side</u> [here, the right] impacted her testimony <u>or would affect Plaintiff's ability to fulfill the visual abilities required for the cited occupations</u>." *Id.* (emphasis added).

any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." *Id.* at *7. The narrative discussion is adequate "where the ALJ discussed all of the relevant medical evidence, none of the record medical evidence conflicted with the RFC, and substantial evidence in the record supported the RFC." *Cochran v. Colvin*, No. 13-CV-726-GKF-FHM, 2015 WL 966495, at *3 (N.D. Okla. Mar. 4, 2015) (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)) and *Ledford v. Barnhart*, 197 F. App'x 808, 811 (10th Cir. 2006) (unpublished)).

### 2. The ALJ's consideration of Plaintiff's testimony in the RFC assessment

Here, Plaintiff argues that in coming to the RFC, the ALJ incorrectly found Plaintiff drove despite her vision issues. (ECF No. 11 at 12.) Specifically, Plaintiff points to the ALJ's notation that Plaintiff "testified her vision affected her driving, but she continues to be able to drive." (R. 20.) This is a misstatement of Plaintiff's testimony.

Throughout her decision, the ALJ highlighted Plaintiff's capacity to drive. For instance, as a part of her paragraph B assessment at step three, the ALJ noted that Plaintiff "drove a car[,] indicating she could ignore or avoid distractions while completing task[s]." (R. 14.) For this proposition, the ALJ cited Exhibit 19F/1. (*Id.*) There is nothing, however, in Exhibit B19F (R. 1943–46) that references Plaintiff's driving, and the undersigned cannot locate another exhibit to which the ALJ might have been referring.

The ALJ's next reference to Plaintiff's driving came when recounting Plaintiff's hearing testimony at the RFC stage. (R. 16.) There, the ALJ claimed that Plaintiff testified she merely "has difficulty driving," and that her vision problems "affect[] her driving." (*Id.*) This is not exactly what Plaintiff testified to.

    ALJ:      Do you have a driver's license?
    CLMT:   Yes, I have a driver's license. It expires on October 31st, 2024.

11

> ALJ: Do you have any difficulty driving?
> CLMT: Yes, ma'am.
> ALJ: Can you describe that difficulty for the record, please?
> CLMT: I take a lot of medication and then my eye – my left eye, it ain't as good as it used to be. And I'm on a lot of medication to where <u>I can't drive</u>. And my legs and everything hurt.

(R. 49 (emphasis added).) Later, Plaintiff clarified that she stopped driving in 2020[7] (R. 64), which is supported by Plaintiff's subsequent *Function Reports* (R. 389, 397, 411 (noting that her illness and sight stops her from driving)).

With this in mind, the ALJ's statement that "[t]he claimant testified her vision affected her driving, but she continues to be able to drive" (R. 20), is unsupported. Because the ALJ misstated Plaintiff's testimony and did not otherwise point to any portion of the record indicating Plaintiff retained the ability to drive (stopping at some point in 2020), the finding is not supported by substantial evidence.

### C. The ALJ's Consideration of Plaintiff's Mental Health Treatment

Finally, Plaintiff notes that the ALJ's findings are also partially based on Plaintiff's "no shows" to mental health appointments and decision to decline therapy. (ECF No. 11 at 13.) Plaintiff contends "the ALJ failed to comply with SSR 16-3p and inquire as to why [Plaintiff] did not seek treatment consistent with her complaints," and failed to consider the four factors articulated in *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987). (*Id.* at 13 & n.13.) The Commissioner does not respond to this argument other than to note that "Plaintiff does not refute the ALJ's observation that she declined therapy and had no inpatient hospitalizations or emergency room visits for psychiatric treatment." (ECF No. 13 at 12.) As outlined below, the ALJ's failure to consider the possible reasons behind

---

[7] Neither Plaintiff's counsel nor the ALJ followed up to determine when in 2020 Plaintiff stopped driving.

Plaintiff's failure to seek treatment, and her failure to consider the *Frey* factors, is reversible error.

### 1. Failure to follow or seek treatment

#### a. SSR 16-3p

Pursuant to SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), if, during the evaluation of a claimant's symptoms, "the frequency or extent of the treatment sought . . . is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment," the ALJ may find the intensity and persistence of their symptoms inconsistent with the overall record. *Id.* at *9. However, the Administration "[w]ill not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons . . . she may not comply with treatment or seek treatment consistent with the degree of . . . her complaints." *Id.* at *9–10 (listing factors to assess).

#### b. *Frey* Factors

Similarly, in *Frey*, the Tenth Circuit identified four factors to consider in "reviewing the impact of a claimant's failure to undertake treatment on a determination of disability," including "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Frey*, 816 F.2d at 517. Previously, the Tenth Circuit had indicated that "*Frey* concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment," but not where the ALJ did not purport to deny benefits on this ground and, instead, "considered what attempts plaintiff made to relieve his pain . . . in

an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Recently, a panel of the Tenth Circuit noted that "*Qualls* suggests the ALJ did not need to consider the *Frey* factors because he considered [the claimant's] noncompliance only to evaluate her claims of disabling symptoms." *Allred v. Comm'r*, No. 22-4044, 2023 WL 3035196, at *3 (10th Cir. Apr. 21, 2023) (unpublished).[8]  However, the court found that to read *Qualls* that way would cause it to conflict with an earlier ruling: *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).  *Id.*  In *Thompson*, the Tenth Circuit held that "before the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility,[9] . . . she should consider" the factors outlined in *Frey*.  *Thompson*, 987 F.2d at 1490 (quoting *Frey*, 816 F.2d at 517).  Because *Thompson* predated *Qualls*, the *Allred* panel chose to follow *Thompson*.  2023 WL 3035196, at *3 (citing *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1188 (10th Cir. 2020)).[10]

The Court finds *Allred* persuasive and agrees that it, too, is bound to follow *Thompson*.  As such, the ALJ here should have considered the *Frey* factors to the extent she relied on Plaintiff's failure to undergo counseling as part of her assessment of Plaintiff's symptoms and RFC.

---

[8] Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

[9] The Social Security Administration has since eliminated use of the word "credibility" when referring to a symptom analysis.  SSR 16-3p, at *2.

[10] "[W]hen faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom." *Crowson*, 983 F.3d at 1188 (quoting *Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996)).

### 2. The ALJ's assessment of Plaintiff's treatment

In this case, the ALJ relied on Plaintiff's failure to engage in therapy during her symptom analysis and during her broader RFC discussion.

First, in her assessment of the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ noted that Plaintiff "had multiple no shows for mental health appointments," which the ALJ viewed as part of a "treatment history . . . not indicative of someone with [Plaintiff's] alleged level of pain and limitation . . . ." (R. 17.) Second, during her discussion of the medical evidence, the ALJ noted that, numerous times in 2019 and 2020, Plaintiff refused mental health therapy. (R. 17–18.) The ALJ also noted that Plaintiff's providers were "encouraging" therapy. (*Id.*) Finally, in the RFC explanation, the ALJ noted that Plaintiff's "mental health treatment during the alleged period of disability has been conservative in nature," including "no inpatient hospitalizations for psychiatric treatment or . . . emergency room visits for emotional crisis," and only "antidepressant medications." (R. 20.) The ALJ emphasized that Plaintiff "declined therapy," and that, if her "symptoms were so debilitating as to preclude even simple work activities . . ., she reasonably would have been expected to require more intensive palliative treatment." (*Id.*)

Because it is clear the ALJ relied on Plaintiff's decision not to seek therapy in both her assessment of Plaintiff's symptoms and the RFC generally, she was under an obligation to consider the potential reasons Plaintiff did not seek such treatment in accordance with SSR 16-3p. She was also required to consider the factors outlined in *Frey*. Having reviewed the ALJ's decision, the Court cannot say the ALJ made any such findings. These factors may be addressed on remand.

15

**VI.   Conclusion**

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is REVERSED AND REMANDED for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 25th day of July, 2025.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT